JEAN-PAUL CIARDULLO, CA Bar No. 284170
jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE: 213.486.0065

*Attorneys for Plaintiff ZURU, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

ZURU, LLC,

*Plaintiff,*

vs.

MOOSE CREATIVE MANAGEMENT PTY LTD, and MOOSE TOYS LLC,

*Defendants.*

Case No. 2:24-cv-7693

**ZURU, LLC'S COMPLAINT FOR DECLARATORY JUDGMENT**

*Jury Trial Demanded*

Zuru, LLC ("Zuru"), by its undersigned attorneys, brings the following complaint for declaratory judgment against Defendants Moose Creative Management Pty Ltd ("Moose Creative") and Moose Toys LLC (collectively, "Moose" or "Defendants"):

**PARTIES**

1. Zuru, LLC is the United States arm of the ZURU Group, a collection of family-owned toy and consumer products companies founded in Cambridge, New Zealand, in 2004. Zuru, LLC manages distribution of Zuru products in the United States.

2. The ZURU Group is one of the fastest growing toy brands in the world and is known for its creativity and new-age manufacturing techniques. The ZURU Group has successfully built its own global brands such as Pets Alive®, 5 Surprise®, Bunch O Balloons™, X-Shot®, Robo Alive®, ZURU Smashers®, and Metal Machines®. The toy industry has recognized these and other Zuru brands with numerous awards and honors.

3. Below, for example, are certain of Zuru's "Pets Alive®" and "5 Surprise®" branded products:







4. The ZURU Group also has partnerships with entertainment properties, including Nickelodeon, Disney, Universal Studios, and DreamWorks. The ZURU Group now employs hundreds of staff, has numerous offices worldwide, produces hundreds of

thousands of toys a day, and supplies most major retailers in more than a hundred countries.

5. Zuru, LLC is a limited liability company organized and existing under the laws of the State of California, with a principal place of business in California located at 2121 E. Maple Ave., El Segundo, CA 90245.

6. Zuru is informed and believes that Moose Creative is an Australian toy company with its principal place of business at 29 Grange Road, Cheltenham, Victoria in Australia.

7. Zuru is informed and believes that Moose Toys LLC is a wholly owned subsidiary of Moose Creative responsible for U.S. toy distribution.

8. Zuru is informed and believes that Moose Toys LLC is a Delaware company with its principal place of business within this District at 737 Campus Square West, El Segundo, CA 90245.

9. Zuru is informed and believes that Moose Creative exclusively licenses its purported trademark rights (including those asserted in this case) to Moose Toys LLC for purposes of U.S. marketing, distribution, and intellectual property enforcement.

## JURISDICTION AND VENUE

10. Zuru brings claims for a declaratory judgment, pursuant to 28 U.S.C. § 2202, to declare that Zuru does not infringe upon Moose Toys' purported trademark rights in "Mama Surprise," including U.S. Trademark Registration No. 7,227,554 for "MAMA SURPRISE" ("Mama Surprise Registration") which was only recently registered in November 2023, and is owned by Moose Creative. Zuru also seeks a declaration of invalidity of the claimed "Mama Surprise" trademark rights. This action thus also asks the Court to resolve matters under the Lanham Act, 15 U.S.C. §§ 1051, et seq.

11. This Court has subject matter jurisdiction over Zuru's claims pursuant to 28 U.S.C. §§ 1331 and 1338, and 15 U.S.C. §1121. As detailed further herein, Moose Creative and Moose Toys LLC jointly sent a cease and desist letter to Zuru on August 15, 2024 (**Exhibit 1** to this Complaint) clearly threatening suit for supposed infringement of their collective purported rights in "Mama Surprise," and subsequently repeated those threats.

Zuru denies Defendants' allegations and seeks to have the matter laid to rest. Thus, an actual justiciable controversy exists as to whether Zuru has infringed Moose's purported trademark rights in "Mama Surprise."

12. Personal jurisdiction over Moose Toys LLC is proper because Moose Toys LLC's principal place of business is within this District, and Moose Toys LLC joined in asserting the subject infringement allegations against Zuru via its various pre-suit correspondence, knowing that Zuru is also located in this District (in fact, in close proximity to Moose Toys LLC), and knowing that resultant harms to Zuru would be felt in this District.

13. Personal jurisdiction over Moose Creative is proper in view of its direct ownership and active control over Moose Toys LLC in this District, wherein Moose Creative employs Moose Toys LLC as the U.S. arm of its business. Personal jurisdiction is also appropriate in view of Moose Creative joining Moose Toys LLC in asserting the subject infringement allegations against Zuru via its various pre-suit correspondence, knowing that Zuru is located in this District in close proximity to Moose Toys LLC, and knowing that resultant harms to Zuru would be felt in this District. In the alternative, personal jurisdiction is appropriate in view of Fed. R. Civ. P. 4(k)(2).

14. Venue is proper in this District under 28 U.S.C. § 1391 because of the parties' presence in this District; and because the infringement threats were knowingly directed to Zuru in this District; and because Defendants have at all times been aware that their infringement allegations would directly harm Zuru in this district where it has its principal place of business.

## BACKGROUND FACTS

### A. The Ubiquity Of "Birthing" Animal Toys, And "Surprise" Toys

15. There have long existed children's toys comprising a fanciful mother animal that "gives birth" to smaller baby toy animals.

16. Additionally, the term "Surprise" is used ubiquitously in the toy industry to describe toys that open to reveal other toys inside them.

17. A primary example of the foregoing has been the "Puppy Surprise" brand of plush toys that gained widespread popularity in the 1990s. These toys – marketed under the PUPPY SURPRISE mark – featured mother dogs who contained removable toy puppies inside them.

18. Below is an example of a Puppy Surprise toy, believed to be from 1991.



19. On information and belief, other toy animals were part of the Puppy Surprise line in the 1990s as well, including bunnies.

20. "Puppy Surprise" remains a brand today, and includes a variety of toy animals that "give birth" to babies. Below are images from the website justplayproducts.com/brands/puppy-surprise/




21. The U.S. Trademark Office website shows PUPPY SURPRISE as Registered Trademark No. 4,454,250, and still active.

22. Other companies have picked up on the "birthing animal" toy theme over the years.

23. More generally, toy companies have been using the term "Surprise" as a standard descriptor for decades.

24. As an example, shown here is an advertisement for an SQEQE brand plush birthing cat containing multiple kittens, and prominently using the word "Surprise" to describe the toy.




25. As another example, below is an advertisement for a Skylety brand plush birthing cat containing multiple kittens, and prominently using the word "Surprise" to describe the toy.



26. As another example, below is an image of the Houwsbaby brand unicorn plush toy that "gives birth." This brand also uses the term "Surprise" in its advertising to describe the birthing aspect.



27. There are countless other historic and current uses of the term "Surprise" to describe nested toys. To name just a few registered trademarks for toys, there is WOWZER SURPRISE®, L.O.L. SURPRISE®, OMG SURPRISE®, SLIMECORN SURPRISE®, GENIE SURPRISE®, and TREASURE SURPRISE®.

28. Zuru itself owns numerous "Surprise" trademarks for "toys inside of other toys," including but not limited to the following marks:

- 5 SURPRISE® (first use in commerce: 2017)
- GUMI YUM SURPRISE (first use in commerce: 2020)
- COCO SURPRISE® (first use in commerce: 2020)
- MONSTERCORN SURPRISE (first use in commerce: 2022)
- BABYCORN SURPRISE® (first use in commerce: 2023)
- GUMMY EGG SURPRISE (first use in commerce: 2022)
- ZURU ANIME POP SURPRISE (first use in commerce: 2023)

## B. Moose's "Little Live Pets" Toys

29. On information and belief, Defendants recently released certain of their own birthing toy animals in either 2022 or 2023. These were made part of an existing brand of Moose toys called "Little Live Pets," such that a sub-group of Little Live Pets was now

referred to as "Mama Surprise."

30. On information and belief, Defendants' first and primary "Little Live Pets" birthing animal toy has been a guinea pig, as shown below.




31. On information and belief, Defendants subsequently released mouse and bunny version of these toys, but have not otherwise released other versions.

32. Moose does not deem "Mama Surprise" to be a discrete brand, as evidenced by the fact that on Moose's website, the "Our Brands" tab only identifies "Little Pets Alive" as a brand (see screen capture here).




33. Moose Creative recently obtained the Mama Surprise Registration on November 28, 2023, based on an application that claimed priority to an original Australian

application that was filed on February 8, 2022.

34. The application for the Mama Surprise Registration does not identify a date when the mark is alleged to have first been used in commerce in the U.S.

35. On information and belief, the prosecution history of the Mama Surprise Registration does not contain any reference to other birthing animal toys, or the pre-existing and well-known "Puppy Surprise" brand, and Moose did not disclose the existence of any such toys or pre-existing trademarks to the Trademark Office when seeking registration.

36. On information and belief, Moose Creative exclusively licenses the Mama Surprise Registration and all other purported related trademark rights to Moose Toys LLC in the U.S., and as part of this, both companies are empowered to seek to enforce the claimed trademark rights, including by filing suit as co-plaintiffs. This conclusion is supported by the fact that the August 15, 2024 cease and desist letter asserting the purported Mama Surprise trademark was sent jointly on behalf of both Moose Creative and Moose Toys LLC.

37. Consumers do not recognize "Mama Surprise" as a brand because (a) Moose's "Mama Surprise" toys are not a distinct brand from the "Little Live Pets" brand; (b) the name "Mama Surprise" is descriptive and non-distinctive; and (c) the subject toys were only just recently released.

**C. Zuru's Pets Alive® Toys**

38. In or around 2018, Zuru launched a brand of toys called "Pets Alive." The brand name is reflective of the fact that these are "active" toys capable of movement, lighting up, or some other dynamic and interactive function. Some examples are shown below.







39. Zuru obtained U.S. Trademark Registration No. 5,734,814 for PETS ALIVE on April 23, 2019, and has been using the mark continuously since that time, prominently identifying it as one of the company's primary brands on Zuru's website.

40. Zuru's Pets Alive® brand is popular and well-known.

41. As a natural off-shoot of the "Pets Alive" theme, and consistent with the well-established concept of a "birthing animal" toy in the marketplace, and the widespread use of the term "Surprise," Zuru recently introduced a Pets Alive® duck toy that was initially marketed and labeled as "Mama Duck Surprise." An image of one of the original release versions of this toy is shown below.




42. Unlike other "birthing" mammalian animal toys that have an internal compartment, Zuru's duck comes with a toy nest and eggs that can split open to reveal ducklings.

43. Zuru's duck toy is also prominently labeled as being a Zuru product under the Pets Alive® brand name, as shown here.

44. Another major thrust of Zuru's marketing and labeling of the duck toy is that it can walk, in keeping with the "Pets Alive" active theme.

45. Zuru's use of the term "Surprise" in connection with the duck toy is consistent with standard industry-wide usage of that term to describe toys that open to reveal other toys inside them. Indeed, Zuru has itself long used the term "Surprise" in connection with its popular 5 SURPRISE® toys that Zuru has been

selling for the better part of a decade, and which have become one of Zuru's most recognizable brands. Zuru has otherwise routinely used the word "Surprise" in connection with embedded toy products for many years.

**D. Moose's Threats**

46. On August 15, 2024, Moose Creative and Moose Toys LLC jointly sent the cease and desist letter attached as Exhibit 1 to this Complaint. That letter claimed that Moose owns trademark rights in "Mama Surprise" (including in the Mama Surprise Registration), and demanded that Zuru immediately cease and desist from using the phrase "Mama Duck Surprise" or "Mama and Baby Duck Surprise" under threat of legal action.

47. In subsequent correspondence, Zuru informed Moose of its intent to modify the name of the product to some variation of "Mommy Duck Baby Surprise" or "Mama Duck Baby Surprise." Moose nonetheless maintained its threats of legal action, even as to the new proposed versions of the name.

**CLAIM I**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

48. Zuru incorporates by reference and re-alleges all of the allegations of the foregoing paragraphs.

49. There is a ripe justiciable controversy over Moose's allegations of trademark infringement as to "Mama Surprise," both with respect to the Mama Surprise Registration, and with respect to any other common law rights that Moose may claim.

50. Zuru's original use of the phrases "Mama Duck Surprise" and "Mama and Baby Duck Surprise" were not likely to cause consumer confusion as between Zuru's duck toy and Moose's "Mama Surprise" toys. These terms are widely used in the toy industry, and Zuru's usage is consistent with its past toy naming conventions. The term "Surprise" is a generic descriptor widely used in the marketplace, and Moose's use of the descriptor "Mama" fails to evoke any distinctive brand in the eyes of consumers. By contrast, Zuru's Pets Alive® brand has long been distinctive, well-known, and recognizable to consumers, making Zuru's duck product readily distinguishable from Moose's products, even apart

from all of their other functional and visual dissimilarities. Consumers viewing Zuru's accused product, with its clear "Zuru Pets Alive®" labeling, and its otherwise different features, would not be confused into believing it was one of Moose's toys. In sum, even if Moose had any valid rights in the phrase "Mama Surprise," they are exceedingly narrow, especially against the backdrop of the long pre-existing and popular Puppy Surprise® brand, which Moose plainly sought to emulate. The foregoing constitutes only a non-exhaustive listing of examples of why Zuru has not engaged in infringement.

51. Zuru's other planned product names of "Mommy Duck Baby Surprise," "Mama Duck Baby Surprise," "Mommy and Baby Duck Surprise," and "Mama and Baby Duck Surprise" are even more different than "Mama Duck Surprise," and thus all the less likely to cause any consumer confusion for the same non-exhaustive reasons articulated in the preceding paragraph.

52. Zuru seeks a judicial declaration that its past and forthcoming versions of its duck product name do not infringe upon any valid trademark rights claimed by Moose.

53. Furthermore, it is apparent from it various pre-suit correspondence that Moose has an overreaching view of its purported trademark rights, and will harass Zuru over any variation of "Mommy/Mama [Animal] [Baby] Surprise" that Zuru may use going forward. Therefore, Zuru seeks a judicial declaration that Zuru's use of the phrase structure "Mommy/Mama [Animal] [Baby] Surprise" – if used and displayed in a manner consistent with how Zuru currently markets and labels its accused duck product – is non-infringing. For example, if Zuru sells a toy unicorn using product packaging and labeling consistent with that already now being used for the accused duck, Zuru does not infringe by labeling that product "Mommy Unicorn Baby Surprise" or "Mama Unicorn and Baby Surprise."

**CLAIM II**

**<u>DECLARATORY JUDGMENT OF INVALIDITY</u>**

54. Zuru incorporates by reference and re-alleges all of the allegations of the foregoing paragraphs.

55. There is a ripe justiciable controversy over Moose's allegations of trademark

infringement as to "Mama Surprise," both with respect to the Mama Surprise Registration, and with respect to any other common law rights that Moose may claim. Therefore, there is also a ripe justiciable controversy over the validity of Moose's purported trademark rights.

56. Notwithstanding the Trademark Office's grant of a registration for "MAMA SURPRISE," that phrase, as applied to birthing toys, is merely descriptive, and hence cannot serve the function of a trademark for birthing toys absent evidence of consumer recognition of secondary meaning in the name, which is lacking here.

57. "Surprise" is an industry-standard term for a "toy within a toy," so "Mama Surprise" translates descriptively to simply a toy within a toy that is a mother.

58. Moose has not used "Mama Surprise" as its own brand, having employed it secondarily to describe certain of the Little Live Pets toys.

59. Consumers do not recognize "Mama Surprise" as a brand because (a) Moose's "Mama Surprise" toys are not a distinct brand from the "Little Live Pets" brand; (b) the name "Mama Surprise" is descriptive and non-distinctive; and (c) the subject toys were only just recently released, and have not been in the market long enough for consumers to develop any impression of the phrase "Mama Surprise" as constituting a brand.

60. Zuru therefore seeks a declaration that the term "Mama Surprise" as applied to birthing toys is invalid as being merely descriptive, and lacking in secondary meaning.

## PRAYER FOR RELIEF

Zuru respectfully seeks an order:

A. Declaring and entering judgment that Zuru has not infringed any of Moose's purported rights in the term "Mama Surprise;"

B. Declaring that Zuru does not infringe by using the phrasing "Mommy [Animal] Surprise" or "Mommy/Mama [Animal] [Baby] Surprise" in connection with product packaging and labeling consistent with what has already been used for the accused duck product;

C. Declaring "Mama Surprise" to be invalid as applied by Moose here;

D. Declaring this case exceptional;

E. Awarding Zuru its costs and reasonable attorneys' fees incurred in connection with this action.

**JURY DEMAND**

Zuru demands a trial by jury as to all claims and issues so triable.

DATED: September 9, 2024

**FOLEY & LARDNER LLP**
Jean-Paul Ciardullo

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo
Attorneys for Plaintiff ZURU, LLC